**STATE of Tennessee**

v.

**Michael Elmore ROBINSON.**

Supreme Court of Tennessee, at Nashville.

Oct. 4, 2000.

Michael J. Flanagan, Nashville, TN, for appellant, Michael Elmore Robinson.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Daryl J. Brand, Associate Solicitor General; William C. Whitesell, Jr., District Attorney General; and John W. Price, III, Assistant District Attorney, for appellee, State of Tennessee.

## OPINION

ANDERSON, C.J., delivered the opinion of the court, in which DROWOTA, BIRCH, and HOLDER, JJ., joined.

This is an appeal from the judgment of the Rutherford County Criminal Court where the defendant was convicted and sentenced for his third offense of driving under the influence. Tenn. Code Ann. § 55-10-401(a) (1998). After determining that the defendant was a repeat offender, the trial court instructed the jury that intoxication may be inferred from a blood alcohol content of .08%. On appeal, the Court of Criminal Appeals rejected the defendant's argument that Tenn. Code Ann. § 55-10-408(b) violated the equal protection provisions of the state and federal constitutions. We conclude that the statute does not violate equal protection be-cause it is rationally related to the State's legitimate interest in deterring repeat offenders. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

We granted this appeal to determine whether Tenn.Code Ann. § 55-10-408(b) (1998), which provides that evidence of a .08% blood alcohol content creates a presumption of intoxication in cases where a defendant has previously been convicted of driving under the influence, violates the equal protection provisions of the United States and Tennessee Constitutions.

The defendant, Michael Elmore Robinson, was convicted of his third offense of driving under the influence (DUI) after the jury was instructed in accordance with Tenn.Code Ann. § 55-10-408(b).[1] On appeal, the Court of Criminal Appeals concluded that the statute is rationally related to the State's legitimate interest in deterring repeat offenders and does not violate the equal protection provisions of the United States or Tennessee Constitutions.

After our review of the record and applicable authority, we agree that Tenn.Code Ann. § 55-10-408(b) is rationally related to the State's legitimate interest in deterring repeat DUI offenders and does not violate the equal protection provisions of the United States or Tennessee Constitutions. We further conclude that in order to protect a defendant's right to a fair trial, the trial court should hold a hearing outside the presence of the jury to determine by a preponderance of the evidence whether the defendant has a prior DUI conviction and, if so, should instruct the jury that it is permitted but not required to "infer" intoxication if it finds the defendant to have a blood alcohol content of .08 %, without using the term "presumption." Because these safeguards were followed in this case, we affirm the Court of Criminal Appeals' judgment.

1. Robinson was sentenced to eleven months and twenty-nine days; one hundred fifty days were to be served in the workhouse, with the balance to be served on probation.

## BACKGROUND

In the early morning hours of July 16, 1995, law enforcement officers found the defendant, Michael Elmore Robinson, asleep in his car in Rutherford County. The rear of Robinson's car was blocking an intersection and the front end was in a ditch, resting against a stop sign. The driver's side door was open and there were two beer cans in the car.

Trooper John Albertson testified that he arrived at the scene around 5:00 a.m. and that Robinson smelled of alcohol. According to Trooper Albertson, Robinson's speech was slurred and he staggered. Robinson admitted to having some drinks around 1:30 a.m. that morning and stated that he had fallen asleep on his way home.

Trooper Albertson administered four field sobriety tests: Robinson could not successfully recite the alphabet, count from one to five on his fingers, stand on one leg, or walk a straight line. Albertson testified that he gave Robinson several chances to perform each test and that Robinson failed each time. The trooper arrested Robinson and took him to a hospital for a blood test. Robinson signed a consent/waiver form and gave a blood sample around 5:30 a.m. Testing revealed that Robinson's blood alcohol content was 0.13 % at the time the sample was taken.

At the close of the evidence, and outside the presence of the jury, the State requested the trial judge to instruct the jury on the presumption of intoxication pursuant to Tenn.Code Ann. § 55–10–408(b), which is required in cases where the defendant is a repeat DUI offender. The trial court did not make a formal finding on the record regarding Robinson's prior DUI convictions, but granted the State's request and instructed the jury in pertinent part that:

> *Evidence ... that there was at the time alleged eight-hundredths of one percent or more by weight of alcohol in the Defendant's blood creates a presumption that the Defendant was under the influence ...* and that the Defendant's ability to drive was impaired. If you find from the proof that the Defendant was found by means of a blood test to have eight-hundredths of one percent or more by weight of alcohol in his blood, *you, the jury, are permitted to infer that the Defendant was under the influence ...* and that the Defendant's ability to drive was therefore impaired sufficiently to constitute a violation of the law against driving under the influence of alcohol.
>
> However, *you're not required to make this inference. It is an exclusive province of the jury to determine whether the facts and circumstances shown by the evidence ... warrant any inference which the law permits you, the jury, to draw from any blood test results.*
>
> Also, *the inference may be rebutted by other evidence and circumstances.* It is for the jury to determine, after the consideration of all the evidence, whether to make the inference which the law permits and the correctness of such inference and what weight to be given to such inference.

(Emphasis added). The jury convicted Robinson of driving under the influence.

On appeal, Robinson argued that the trial court's jury instruction pursuant to Tenn.Code Ann. § 55–10–408(b) violated his fundamental right to equal protection as guaranteed by the state and federal constitutions. The Court of Criminal Appeals rejected the argument, holding that the .08% presumption contained in Tenn. Code Ann. § 55–10–408(b) is rationally related to the State's legitimate interest in deterring repeat DUI offenders.

We granted this appeal to review this issue of first impression.

## ANALYSIS

### Standard of Appellate Review

When this Court evaluates a statute, we must presume that an act of

the General Assembly is constitutional and must uphold the constitutionality of a statute whenever possible. *Riggs v. Burson,* 941 S.W.2d 44, 51 (Tenn.1997); *WRG Enterprises, Inc. v. Crowell,* 758 S.W.2d 214, 215–216 (Tenn.1988). As the constitutionality of a statute is a question of law, our review is de novo without a presumption of correctness given to the lower courts' judgments. *E.g., State v. King,* 973 S.W.2d 586, 588 (Tenn.1998).

### Constitutional Review

We begin our analysis by examining the language of Tenn.Code Ann. § 55–10–408(b) (1998), which states:

> Evidence that there was, at the time alleged, eight-hundredths of one percent (.08%) or more by weight of alcohol in the defendant's blood shall create a presumption that the defendant was under the influence of such intoxicant, and that the defendant's ability to drive was impaired thereby.... The provisions of this subsection only apply if the defendant has been convicted one (1) or more times of violating the provisions of § 55–10–401[ (a)(1) ] [statute proscribing driving under the influence].

In contrast, the presumption in first-offense DUI cases requires a blood alcohol content of .10%. Tenn.Code Ann. § 55–10–408(a) (1998).

Turning to the constitutional equal protection provisions which impact the statute, the federal and state constitutions guarantee to citizens the equal protection of the laws. The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Tennessee Constitution contains two provisions that have been interpreted as extending equal protection guarantees. Article I, § 8 states that:

> no man shall be taken or imprisoned, or disseized of his freehold, liberties

or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

Tenn. Const. art. I, § 8. Article XI, § 8 states that the:

> Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Tenn. Const. art. XI, § 8.

■ Equal protection constitutional provisions guarantee that " 'all persons similarly circumstanced shall be treated alike.' " *Tennessee Small Sch. Sys. v. McWherter,* 851 S.W.2d 139, 153 (Tenn. 1993) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920)). This Court has said:

> The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States, and legislatures are given considerable latitude in determining what groups are different and what groups are the same.... In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest.

*Tennessee Small Sch. Sys.,* 851 S.W.2d at 153 (citations omitted).

■ We have recognized the linguistic and historical differences between the state and federal equal protection provisions. *State v. Tester,* 879 S.W.2d 823, 827 (Tenn.1994). In analyzing equal pro-

tection challenges, however, we have generally used an analytical framework similar to that used by the United States Supreme Court. Depending on the nature of the right asserted, we apply one of three standards of scrutiny: (1) strict scrutiny, (2) heightened scrutiny, and (3) reduced scrutiny, applying the rational basis test. *Brown v. Campbell County Bd. of Educ.*, 915 S.W.2d 407, 413 (Tenn. 1995); *State v. Tester*, 879 S.W.2d at 828; *Tennessee Small Sch. Sys.*, 851 S.W.2d at 153.

■ Strict scrutiny, which Robinson argues applies in this case, applies only when the classification 1) operates to the peculiar disadvantage of a suspect class, or 2) interferes with the exercise of a fundamental right. *E.g., State v. Tester*, 879 S.W.2d 823, 828 (Tenn.1994). It is apparent that Robinson—a repeat DUI offender—is not a member of a suspect class. In *Tester*, we observed that repeat DUI offenders are not a suspect class because they "have never been 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian process.'" *Tester*, 879 S.W.2d at 828 (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973)). Accordingly, strict scrutiny does not apply on this basis.

■ Robinson nonetheless maintains that strict scrutiny review is appropriate because the statute and the trial court's instructions to the jury infringed upon his fundamental right to a fair trial by lowering the State's burden of proof with respect to repeat DUI offenders. We disagree. Our review of the statute, as well as the trial court's instructions to the jury reveals that a mandatory or conclusive presumption was not created and that the State's burden of proof was not lessened, modified or altered in anyway. Our case law illustrates this point.

In *State v. Bolin*, 678 S.W.2d 40, 43 (Tenn.1984), the trial court instructed the jury that "the use of a deadly weapon ... raises a presumption of malice, unless rebutted by other facts and circumstances to the contrary." The trial court further instructed the jury, however, that the presumption could be rebutted and that the defendant "had [no] burden of proof whatever." *Id.* at 43. After observing that the trial court also instructed the jury regarding the defendant's presumption of innocence and the State's burden to prove each and every element beyond a reasonable doubt, we concluded "that no reasonable jury could have interpreted the challenged instruction as mandatory or conclusive or as shifting to the defendant the burden of persuasion." *Id.* at 44.

We stressed in *Bolin*, however, that a trial court should avoid the use of the term "presumption" in its instructions to the jury, except for the presumption of innocence. *Id.* at 44. We stated that in place of the term "presumption," the jury "may be instructed that a permissible inference may or may not be drawn of an elemental fact from proof by the State of a basic fact, but that such inference may be rebutted and the inference places no burden of proof of any kind upon defendant." *Id.* at 44–45. *Cf. State v. Martin*, 702 S.W.2d 560, 564–65 (Tenn.1985) (instruction on malice did not satisfy *Bolin* and was reversible error).

In our view, when read as a whole, the jury instructions in the present case did not create a mandatory or conclusive presumption, nor did it lessen or modify the State's burden of proof. The trial court's instruction tracked the statutory language in stating that "[e]vidence ... that there was ... eight-hundredths of one percent or more by weight of alcohol in the Defendant's blood creates a presumption that the defendant was under the influence." In the very next sentence, however, the trial court defined the presumption as a permissive inference and explained that if the jury found the defendant's blood alco-

hol content to be .08 %, it was "permitted to infer" that the defendant was under the influence. In addition, the trial court further explained that the jury was "not required to make this inference" and that "the inference may be rebutted by other evidence and circumstances." Finally, the jury was properly instructed that the defendant is presumed innocent and that State's burden of proving the defendant's guilt beyond a reasonable doubt does not shift to the defendant. In short, the trial court's instructions to the jury in the present case were more comprehensive than the instructions upheld in *Bolin* and did not impair the defendant's right to a fair trial.

■ Accordingly, we hold that Tenn. Code Ann. § 55–10–408(b) affects neither a suspect class nor a fundamental right and that rational basis scrutiny applies in this case. Moreover, we conclude that the .08 % presumption, which is lower than the .10% presumption applied in first-offense DUI cases, is rationally related to the State's legitimate interest in deterring repeat DUI offenders.[2]

■ Finally, to assist with the application of this statute in future cases, we agree with the procedures recommended by the Court of Criminal Appeals. A trial court should hold a hearing outside the presence of the jury and make a formal finding on the record as to whether the defendant has prior DUI convictions before instructing the jury pursuant to Tenn.

Code Ann. § 55–10–408(b).[3] *E.g.,* Tenn. R.Evid. 104. As we have stated, "to allow a jury to have before it evidence of former convictions, at the time they are required to decide upon the defendant's guilt or innocence of the present crime, will deny to a defendant the procedural fairness due him." *Harrison v. State,* 217 Tenn. 31, 394 S.W.2d 713, 717 (1965). As in this case, a trial court must also instruct the jury that it may draw an inference of intoxication from the blood alcohol evidence but that it is not required to do so.

■ Though the trial judge did not make a formal finding on the record regarding Robinson's prior DUI convictions, our de novo review of the record reveals that the parties stipulated to these two prior convictions, the convictions were read into the record, and after a hearing outside the presence of the jury, the trial judge gave instructions pursuant to Tenn. Code Ann. § 55–10–408(b). Accordingly, we agree with the Court of Criminal Appeals' conclusion that the trial court sufficiently complied with these safeguards.

## CONCLUSION

We conclude that Tenn.Code Ann. 55–10–408(b) is rationally related to the State's legitimate interest in deterring repeat DUI offenders and does not violate the equal protection provisions of the state or federal constitutions. We further conclude that in order to protect a defendant's right to a fair trial, the trial court should hold a hearing outside the presence of the

2. Other jurisdictions have reached a similar conclusion regarding presumptions contained in driving under the influence statutes. *See Commonwealth v. Howard,* 969 S.W.2d 700, 702 (Ky.1998) ("driving an automobile is not a fundamental constitutional right, but a legitimately regulated privilege.... Thus, the review of this matter under a rational basis analysis is appropriate because the legislation in question does not infringe on a fundamental right, nor does it impact on a suspect class negatively." *Lattarulo v. State,* 261 Ga. 124, 401 S.E.2d 516, 518 (1991) (challenged provisions creating a presumption of intoxication at .10% blood alcohol content "do not relieve the state of its burden ... [and] do not pre-

vent the accused from introducing any evidence that the blood-alcohol test was inaccurate....").

3. We reject Robinson's argument that the instruction implicitly informs the jury of the prior convictions. As previously stated, many states presume intoxication from a .08% blood alcohol level for first time offenders. In any event, the jury was simply instructed that it could infer intoxication if it found the defendant's blood alcohol content to be .08% or greater. The jury was not instructed that the .08% standard applies only to repeat offenders or that Robinson is a repeat offender.

jury to determine whether the defendant has a prior DUI conviction and, if so, instruct the jury that it may "infer" intoxication if it finds the defendant to have a blood alcohol content of .08%. The trial court should clearly state that such evidence is not conclusive but merely allows a permissible rebuttable inference.

We affirm the Court of Criminal Appeals' judgment. Costs of appeal are taxed against the defendant, Michael Elmore Robinson, for which execution may issue if necessary.

BARKER, J., not participating.