IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 5, 2012

# IN THE MATTER OF: ANTAR R.W.

### Direct Appeal from the Juvenile Court for Shelby County
### No. W0619     Curtis S. Person, Jr., Judge

### No. W2011-01244-COA-R3-JV - Filed July 27, 2012

The State filed a petition for child support against a father, on behalf of a non-parent caretaker who was caring for the father's son. The juvenile court ordered the father to pay current and retroactive child support. The father filed a motion asking the court to rehear the child support matter and/or consolidate it with a separately pending child custody case. The juvenile court denied the motion, and the father appealed. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Beth Brooks, Memphis, Tennessee, for the appellant, Dexter W.

Robert E. Cooper, Jr., Attorney General and Reporter, Marcie E. Greene, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee *ex rel.* Justin Allen Ratliff

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

The child at issue in these proceedings, Antar W. ("Son"), was born in July of 1994. In 2009, when Son was 15 years old, the State of Tennessee filed a petition on behalf of Justin Ratliff, who is apparently Antar's adult half-brother, seeking to recover child support from Son's father, Dexter W. ("Father"). The petition alleged that Son was in the care or custody[1] of Mr. Ratliff, and that Mr. Ratliff had applied for child support enforcement assistance pursuant to Title IV-D of the Social Security Act. The petition asked the juvenile court to enter an order requiring Father to pay current and retroactive child support.

Father filed a response in which he claimed that he had been awarded custody of Son in 2007 after Son's mother fell into a coma. Father alleged that Son became rebellious and began running away, and that in July 2008, Son ran away but did not return home as he had done in the past. Father claimed that Mr. Ratliff had been "harboring" Son without Father's consent since February 2009. Father acknowledged in his response that an order had been entered granting custody of Son to Mr. Ratliff. However, Father claimed that he had no notice of the "proceedings" giving rise to the custody order, and he asked that the custody order be set aside. He also asked that the child support petition be dismissed.

A special judge held a hearing, of which we have no transcript, and subsequently entered an order which stated, "[Father] acknowledges his obligation to support [Son]." The order required Father to pay $647 per month in child support, but it specifically reserved the

---

[1] Tennessee Code Annotated section 36-5-101 provides, in relevant part:

(b)(1) Notwithstanding any other provision of law to the contrary, neither the department of human services, nor any Title IV-D child support contractor of the department, nor any recipient of public assistance in this or any other state or territory, nor any applicant for either public assistance in this or any other state or territory or for Title IV-D child support services from the department or any other Title IV-D agency in this or any other state or territory, shall be required to demonstrate to a court or administrative tribunal that the caretaker of the child for whom child support is sought is vested with any more than physical custody of the subject child or children, in order to have standing to petition for child support from the legal parent of the child or children for whom support is sought, or to seek enforcement or modification of any existing orders involving such child or children.

(2) Legal custody of a child to whom a child support obligation is owed shall not be a prerequisite to the initiation of any support action or to the enforcement or modification of any support obligation in such cases, whether or not the obligation has been assigned to this state or any other state or territory by operation of law.

issue of retroactive child support "until after the custody hearings" that were pending in a separate case.[2]

Father later filed a "Motion for Consolidation, Transfer, Reconsideration and Hearing by Presiding Judge," essentially restating his allegation that Mr. Ratliff was "harboring" his runaway Son.  He also argued that the trial court's calculation of child support denied him equal protection because the trial court did not assign any income to Mr. Ratliff.  Father further argued that the child support guidelines created an "ethical conflict" and were perhaps illegal because the percentage system utilized by the guidelines allegedly favored Father's non-custodial child over the four children living in Father's home.  Thus, in sum, Father asked the court to rehear the child support matter and/or consolidate it with the custody matters pending in the other case.

Following another hearing, of which we have no transcript, the special judge denied the motion for consolidation, transfer, reconsideration, and rehearing.  Father then filed a notice of appeal to circuit court, and the appeal was subsequently transferred to this Court.  Upon reviewing the record, we directed the parties to obtain the entry of an order resolving the outstanding issue of retroactive child support.  Thereafter, the juvenile court entered a final order requiring Father to pay $25 per month toward a total retroactive support obligation of $7,117, representing eleven months of child support.  Son reached the age of 18 while this appeal was pending.

## II.   ISSUES PRESENTED

Father's brief on appeal lists 27 issues and sub-issues for review on appeal.  However, our ability to review the proceedings in the lower court is hampered by the absence of either a transcript or a statement of the evidence prepared in accordance with Tennessee Rule of Appellate Procedure 24(c).  The appellant has a duty to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues that form the basis of his or her appeal.  *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005).  "A recitation of facts and argument in an appellate brief does not constitute evidence and cannot be considered in lieu of a verbatim transcript or statement of the evidence and proceedings."  *In re M.R.*, No. M2007–02532–COA–R3–JV, 2008 WL 2331030, at *3 (Tenn. Ct. App. W.S. June 3, 2008) (citing *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)).  We cannot simply assume that the facts recited are true.  *In re Conservatorship of Chadwick*, No. E2006–02544–COA–R3–CV, 2008 WL 803133, at *1 (Tenn. Ct. App. Mar. 27, 2008).  "The law is clear that statements of fact made in or attached to pleadings, briefs, and oral arguments are not evidence and may not be considered by an

---

[2] The precise nature of these separately pending "custody hearings" is not clear from the record.

appellate court unless they are properly made part of the record." ***Threadgill v. Bd. of Prof'l Responsibility of Supreme Court***, 299 S.W.3d 792, 812 (Tenn. 2009).

"Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." ***State v. Ballard***, 855 S.W.2d 557, 561 (Tenn. 1993). "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." ***Outdoor Mgmt., LLC v. Thomas***, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (citing *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)). Therefore, we may only reverse the trial court's decision if we find, based on the "technical" record before us, that the trial court committed an error of law. ***In re M.R.***, 2008 WL 2331030, at *3 (citing *In re Conservatorship of Chadwick*, 2008 WL 803133, at *2).

Aside from the sparse record before us, there are also several other obstacles that affect our ability to review the issues presented by Father. He attempts to raise numerous issues on appeal that do not appear to have been raised in the trial court. His formulation of several other issues is unclear, such that we simply cannot discern the basis of Father's arguments.[3] Finally, Father raises various arguments regarding the merits of the custody proceedings, which are not at issue on appeal, as Father's brief states that the custody matter is currently pending in circuit court, and we also note that Son has now reached the age of 18.

From our review of the record and the briefs, the issues that were properly presented, as we perceive them, involve: (1) whether the custody and support matters should have been consolidated; (2) whether Father was denied equal protection by the trial court's failure to assign income to Mr. Ratliff; and (3) whether the child support guidelines impermissibly favored a non-custodial child over a custodial child.

### III.   DISCUSSION

#### *A.     Consolidation*

Father argues on appeal that considering the issues of child custody and child support in two different proceedings denied him a just and speedy determination of his rights, and that the two matters should have been consolidated. A trial court has discretion as to whether

---

[3] For example, his brief lists as issues: "Whether the State has a conflict with the duty to further the public policy and with the collection of funds," and "Whether a distinction should be made in business of the State (character) or in the way the business of the State is conducted."

the facts of a particular case merit consolidation. ***McMillin v. Lincoln Memorial Univ.***, No. E2010–01190–COA–R3–CV, 2011 WL 1662544, at *9 (Tenn. Ct. App. May 3, 2011) (citing *Van Zandt v. Dance*, 827 S.W.2d 785, 787 (Tenn. Ct. App. 1991)). Its discretion in ordering or refusing consolidation will not be interfered with unless abused. ***Id.***

Here, the record contains little information about the separately filed custody matter. When Father filed his response to Mr. Ratliff's petition to set child support, in November 2009, he acknowledged that an order had already been entered granting Mr. Ratliff custody of Son. When the trial court entered its order requiring Father to pay child support in January 2010, it reserved the issue of retroactive support "until after the custody hearings" in the other case, although it is not clear from the record what specific matters were being heard. It was not until Father filed his motion to reconsider, in April 2010, that he asked the court to rehear the child support issue and consolidate the two cases. Following a hearing, the judge declined to do so. We have no transcript of that hearing in the record before us. As noted above, in cases where no transcript or statement of the evidence is filed, the appellate court is required to presume that the record, had it been properly preserved, would have supported the action of the trial court. ***Allen v. Allen***, No. W2010-00920-COA-R3-CV, 2011 WL 198516, at *3 (Tenn. Ct. App. Jan. 12, 2011) (citing *Reinhardt v. Neal*, 241 S.W.3d 472, 477 (Tenn. Ct. App. 2007); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)). Moreover, Father argues on appeal that the child support and the child custody matters "should be consolidated so that a just, speedy, inexpensive conclusion of all matters on their merits can be had in one Court." However, Son has already reached the age of eighteen, so the proceedings as to custody are now moot. For all of these reasons, we find no reversible error in the trial court's denial of the motion to consolidate.

## B.    Mr. Ratliff's Income

The child support worksheets in the record before us list zero income for Mr. Ratliff because he was classified as a non-parent caretaker. The Child Support Guidelines provide:

> If custody or guardianship of a child is awarded to a person or entity other than a parent of the child as defined in 1240-2-4-.02(15), the child support obligation shall be calculated on the Worksheet according to the rules for standard parenting, and each parent will be responsible for paying his/her share of the final obligation to the non-parent caretaker of the child. If only one parent is available, then that parent's income alone is considered in establishing the child support award. The income of a non-parent caretaker is not considered. If the tribunal is able to order both parents to pay support for the children, the tribunal shall assign each parent a pro rata share of the additional expenses.

Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(a)(5). Father argues that Mr. Ratliff received a "free pass" in violation of Father's rights to equal protection. Father contends that he and Mr. Ratliff should be treated the same.

The Child Support Guidelines have been held to have the force and effect of a legislative mandate. *Gallaher v. Elam*, 104 S.W.3d 455, 459-60 (Tenn. 2003) (citing *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993)).[4] Therefore, in evaluating Father's constitutional challenge, we begin with the presumption that the challenged guideline is constitutional, and we must indulge every presumption and resolve every doubt in favor of its constitutionality. *Id.*

The United States and Tennessee Constitutions guarantee citizens the equal protection of the laws. *Gallaher*, 104 S.W.3d at 460 (citing *State v. Robinson*, 29 S.W.3d 476, 479 (Tenn. 2000)). In analyzing equal protection challenges, "one of three standards of scrutiny applies, depending upon the nature of the right asserted or the class of persons affected: (1) strict scrutiny; (2) heightened scrutiny; or (3) reduced scrutiny, applying the rational basis test." *Id.* If the classification at issue "operates to the peculiar disadvantage of a suspect class" or "interferes with the exercise of a fundamental right," then strict scrutiny applies. *Id.* "A suspect class is one that has been 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian process.'" *Id.* at 461 (quoting *Robinson*, 29 S.W.3d at 481). The class of obligors that Father challenges (i.e., parents, versus non-parent caretakers) fails to meet this definition and, therefore, is not a suspect class. *See id.* We similarly conclude that the guideline Father challenges does not interfere with a fundamental right. Although a parent has a fundamental right to the care and custody of his child, such an interest is distinct from the duty to support a child. *Id.* "Allocating a certain amount of financial support to one's children is a mandatory obligation, not a fundamental right. As such, parents have no fundamental right to allocate support to their children as they see fit." *Id.* Because Father's constitutional challenge implicates only his duty to support his children, and not his right to be a parent or to have a relationship with his child, we will not apply strict scrutiny to his equal protection challenge. *See id.*

The next standard of scrutiny, heightened scrutiny, "applies only to legislative classifications involving a quasi-suspect class, such as gender or illegitimacy." *Id.* (citing *Nat'l Gas Distribs. v. Sevier County Util. Dist.*, 7 S.W.3d 41, 45 (Tenn. Ct. App. 1999)). Again, we conclude that Father's equal protection challenge does not involve a quasi-suspect class, and therefore, heightened scrutiny is inapplicable. As a result, we must use reduced

---

[4] In *Gallaher*, 104 S.W.3d at 461, our Supreme Court considered an equal protection challenge to another section of the Child Support Guidelines.

scrutiny, under the rational basis test, in analyzing Father's claim. *See id.*

As noted above, the equal protection provisions of the federal and state constitutions demand that persons similarly situated be treated alike. *Id.* (citing *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993)). However, "state legislatures have the initial discretion to determine what is 'different' and what is 'the same' and . . . they are given considerable latitude in making those determinations." *Id.* (quoting *Robinson*, 29 S.W.3d at 480). "[U]nder the rational basis test, a statute may discriminate in favor of a certain class, as long as the discrimination is founded upon a reasonable distinction or difference in state policy." *Id.* (citing *Castlewood, Inc. v. Anderson County*, 969 S.W.2d 908, 910 (Tenn. 1998)). Thus, our inquiry generally is limited to "whether the challenged classifications have a reasonable relationship to a legitimate state interest."[5] *Id.*

Clearly, the challenged section of the Child Support Guidelines treats parents differently than non-parent caretakers by excluding the income of a non-parent caretaker from the child support calculation. However, we find that it is certainly rational to do so and that this different treatment is based upon a reasonable distinction. "Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support[.]" Tenn. Code Ann. § 34-1-102(a). "It seems abundantly clear that since time immemorial it has been the public policy of this state that a parent is under a duty to support his children." *Witt v. Witt*, 929 S.W.2d 360, 362 (Tenn. Ct. App. 1996). The Child Support Guidelines accordingly presume "that both parents contribute to the financial support of the child in pro rata proportion to the actual income available to each parent." Tenn. Comp. R. & Regs. 1240-02-04-.03(1)(a). In contrast, a non-parent has no such duty to support, and therefore, his or her income is not considered when establishing a parent's child support obligation. The State has a legitimate interest in requiring a parent to contribute to the support of his or her children, and it is rational to conclude that the parent's child support obligation should not be reduced due to the income of a non-parent who takes on the responsibility of caring for someone else's child. Because these classifications pass muster under the rational basis test, Father's equal protection challenge must fail.

---

[5] "It is not necessary that the legislature state a rational basis for this differential treatment. A classification will pass constitutional muster if we can conceive of some rational basis for the distinction." *Gallaher*, 104 S.W.3d at 462 (quoting *Riggs*, 941 S.W.2d at 53 (stating that a statutory classification is rational "if any state of facts may reasonably be conceived to justify it")).

### C. Percentage of Income for Each Child

Father was ordered to pay $647 per month in child support for Son, and he argues that this results in Son being disproportionately favored over the four children residing in his home. Although the precise nature of Father's legal argument is unclear, it appears to be founded in the equal protection clause.

In *Gallaher*, 104 S.W.3d at 460-62, our Supreme Court considered and rejected a similar argument, under a previous version of the Child Support Guidelines. The father in that case had one child as the result of an extramarital affair, and three minor children living in his household who were born of his marriage to his wife. He contended that it violated the equal protection clause for the child support guidelines to allow court-ordered child support to be deducted from an obligor's income, while consideration of non-court-ordered child support was prohibited. In other words, children of the obligor who were not included in a decree of child support could not be considered for the purpose of reducing the obligor's net income or in calculating the guideline amount. The father argued that it was unconstitutional to treat obligors who have children for whom there are no orders of support differently than those who have children subject to support orders. Applying the rational basis test, the Supreme Court found no equal protection violation. It explained:

> Chapter 1240–2–4–.03(4) of the Guidelines is designed to ensure that the voluntary acts of obligors (e.g., choosing to have additional children) do not reduce their existing court-ordered child support obligations. It is rational to require obligors to be under a court order to support their children before those children can be considered in calculating the amount of support for another child because such a requirement ensures that the obligor is legally liable for the amount of child support claimed as a deduction. Furthermore, the obligor's children who are not receiving support pursuant to a court order and who live with the obligor inherently benefit from the obligor's household expenditures. Children who do not live with the obligor do not enjoy this benefit. Thus, both policy and fact justify the classification at issue. Moreover, the trial court is not flatly prohibited from considering non-court-ordered support. Chapter 1240–2–4–.04(4) of the Guidelines provides that courts may deviate from the Guidelines in cases of "extreme economic hardship." We conclude that the state has a rational, legitimate interest in requiring obligors to be under a court order to support their children before these children may be considered in calculating the amount of support for another child. Because the classification used in chapter 1240–2–4–.03(4) of the Guidelines passes the rational basis test, [the obligor's] equal protection challenge fails.

-8-

*Id.* at 462.

The Child Support Guidelines now allow an adjustment to a parent's gross income for "qualified other children." Tenn. Comp. R. & Regs. 1240-02-04-.04(5). A credit is available for a child for whom the parent is legally responsible, and actually supporting, and who is not before the tribunal in the case immediately under consideration.[6] *Id.* Father admittedly received such a credit in this case, and he does not dispute the method of calculation of his credit.[7] Still, Father's argument, while attempting to focus more on the rights of the children than the obligor, is essentially the same as the one presented in *Gallaher*.[8] He basically contends that it is unconstitutional to treat obligors who have children for whom there are no orders of support differently than those who have children subject to support orders. Our Supreme Court has already concluded that such different treatment does not violate the equal protection clause.[9] We therefore find no merit in his argument on appeal.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the juvenile court is hereby affirmed. We deny Father's request for attorney's fees, finding no basis for such an award. Costs of this appeal are taxed to the appellant, Dexter W., and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[6] "Children for whom support is being determined in the case under consideration, step-children, and other minors in the home that the parent has no legal obligation to support shall not be considered in the calculation of this credit." Tenn. Comp. R. & Regs. 1240-02-04-.04(5)(b).

[7] "The available credit against gross income for either parent's qualified 'in-home' children is seventy-five percent (75%) of a theoretical support order calculated according to these Guidelines, using the Credit Worksheet, the parent's gross income less any self-employment taxes paid, the total number of qualified other children living in the parent's home, and the Schedule." Tenn. Comp. R. & Regs. 1240-2-4-.04(5)(e)(1)(ii).

[8] We note that Father has not attempted to bring suit on behalf of his children in an effort to assert their rights.

[9] As noted by the Supreme Court, "the obligor's children who are not receiving support pursuant to a court order and who live with the obligor inherently benefit from the obligor's household expenditures. Children who do not live with the obligor do not enjoy this benefit." *Gallaher*, 103 S.W.3d at 462.