IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 18, 2017 Session

## STATE OF TENNESSEE v. ARTHUR JAY HIRSCH

**Appeal from the Circuit Court for Lawrence County**
**No. 32518     Stella Hargrove, Judge**

_____

### No. M2016-00321-CCA-R3-CD

_____

The defendant, Arthur Jay Hirsch, appeals his Lawrence County Circuit Court jury convictions of driving on a suspended license, unlawfully carrying a weapon with the intent to go armed, and violating both the vehicle registration and financial responsibility laws, claiming that the statute proscribing the unlawful carrying of a weapon is unconstitutional, that the rulings of the trial court evinced a bias against him and resulted in a violation of due process principles, and that the trial court lacked subject matter jurisdiction.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Arthur Jay Hirsch, Lawrenceburg, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Kim Helper, District Attorney General; and Tammy Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Lawrence County Grand jury charged the defendant with one count of driving while his license was cancelled, suspended, or revoked; one count of carrying a firearm with the intent to go armed; one count of violating the motor vehicle registration requirement; and one count of violating the financial responsibility law.

The evidence adduced at the defendant's December 2015 jury trial established that, on the evening of December 10, 2013, Tennessee Highway Patrol Sergeant Jeff Reed first observed the defendant driving "a vehicle . . . that had a strange

registration plate on the rear of the vehicle." When Sergeant Reed saw that the vehicle also lacked a registration plate on the front bumper, he followed the vehicle, "[a] red Ford F-350 with a steel flatbed on the vehicle," into a nearby parking lot, where he made contact with the defendant. When Sergeant Reed asked about the registration plate, the defendant pointed to the plate on the rear of his vehicle. When asked "about his real registration plate," the defendant said "that he was not required to have one." Sergeant Reed testified that the plate affixed to the rear bumper of the defendant's vehicle was "not an official government plate recognized anywhere within Canada, United States, or Mexico." According to Sergeant Reed, the plate, which contained a reference to Little Shell Pembina Band along with "some alpha numerics and some numbers," looked "almost" like "an official registration plate." A photograph of the registration plate was exhibited to Sergeant Reed's testimony and displayed to the jury.

When Sergeant Reed asked to see the defendant's driver's license, the defendant "started to explain . . . why he . . . was not required to have a driver's license in regards to the laws of God, the laws of man and thus he was not required to have a driver's license." The defendant possessed no registration papers for his vehicle or proof of insurance and provided a similar explanation to Sergeant Reed for having neither.

At that point, Sergeant Reed inquired whether the defendant had any weapons on his person or in the vehicle, and defendant said that he did. The defendant said that he did not have a permit for the weapon, a small pistol that he had stored in a small water cooler. The weapon was loaded.

Sergeant Reed issued a citation to the defendant for driving while his license was suspended. The officer later obtained from the State of Virginia a certified document reflecting the status of the defendant's driver's license. That document, which established that the defendant's driver's license had been suspended, was exhibited to Sergeant Reed's testimony.

At the conclusion of Sergeant Reed's testimony, the State rested. Following a *Momon* colloquy, the defendant, who was acting pro se, elected to put on proof in the form of a sworn statement before the jury.

In his statement, which the trial court allowed in lieu of direct examination, the defendant acknowledged that he did not comply with the financial responsibility or motor vehicle registration laws, that he did not have a valid driver's license, and that he had in his possession a loaded handgun as described by Sergeant Reed. He explained that he had discovered, through his own research, that, because he was not engaged in commerce, he was not required to have a driver's license or obtain vehicle registration. He insisted that it was his God-given, unalienable right to travel freely and arm himself

-2-

for protection and that the State of Tennessee could not interfere with those rights by requiring that he register his vehicle, obtain a driver's license, register his firearm, or obtain a permit to carry his firearm. The defendant insisted that he possessed the weapon solely for protection and that he "wasn't intending to go armed against anybody." He acknowledged, however, that he was prepared to fire the weapon should the need arise. He said that the financial responsibility law was unconstitutional because it forced him to enter into an insurance contract against his will. The defendant added that the requirement that he utilize his Social Security number to obtain a driver's license or handgun carry permit violated his religious beliefs because the Social Security number was a precursor to the "mark of the beast" described in the Book of Revelation.

When cross-examined, the defendant said that he had originally possessed a valid Virginia driver's license but that, after he made these discoveries regarding his right to travel freely, he "took the steps to notify the Department of Motor Vehicles in Virginia . . . that [he] was rescinding [his] signature off the original application." He also turned in his driver's license along with an affidavit in August 2003. Shortly thereafter, he was ticketed for speeding in the State of Virginia. The defendant insisted that because he "had submitted all this paperwork severing [his] relationship with the Department of Motor Vehicles," "they don't have administrative authority" to ticket him for a traffic violation or to suspend his driver's license. The defendant acknowledged that documentation established that he was convicted of speeding but insisted that the conviction did not count because he "was free of the requirement to get a license and the registration and so forth." The defendant also claimed that the certified driving record exhibited to Sergeant Reed's testimony "is questionable" because it indicates that he was "a commercial driver" when he was never "driving in commerce."

In a nutshell, the defendant explained that requirements that he obtain a driver's license, car insurance, and a handgun carry permit and that he register his vehicle violate those rights accorded to him by the Bible, the Declaration of Independence, and the state and federal constitutions.

Following the defendant's testimony, the jury convicted the defendant of driving on a suspended license, unlawfully carrying a firearm with the intent to go armed, and failing to comply with the motor vehicle registration and financial responsibility requirements.

The defendant did not file a motion for new trial but did file a timely notice of appeal, which brings us to our first consideration. In its brief, the State argues that the defendant has waived plenary consideration of all of his claims by failing to file a motion for new trial. The defendant moved this court to suspend the rules of criminal procedure to allow appellate consideration of his claims.

Initially, we note that the State's assertion that the defendant's failure to file a motion for new trial bars all of the defendant's claims on appeal is incorrect. The failure to file a motion for new trial bars only those claims for which a new trial is the remedy. As to those claims for which the remedy is a dismissal of the charges, the failure to file a motion for new trial does not operate as a bar to appellate relief. The defendant raises two such claims, both of which strike at the jurisdiction of the trial court: that the statute prohibiting the carrying of a firearm with the intent to go armed is unconstitutional on its face[1] and that the trial court lacked subject matter jurisdiction in this case.

With regard to the remainder of the defendant's myriad claims, the State is correct.[2] His failure to file a motion for new trial acts as a bar to plenary appellate review of those claims. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . [any] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). As indicated, the defendant has asked this court to suspend the rules of procedure to allow full consideration of all of the claims he presents in this appeal. Although Rule 2 of the Rules of Appellate Procedure provides this court with the authority to "suspend the requirements or provisions of any of these rules in a particular case," Tenn. R. App. P. 2, the rules of criminal procedure prohibit the extending of the time for filing a motion for new trial, *see* Tenn. R. Crim. P. 45(b)(3) ("The court may not extend the time for taking any action under Rules of Criminal Procedure 29, 33 and 34, except to the extent and under the conditions stated in those rules."). Because the time for filing a motion for new trial cannot be extended, because an untimely filed motion for new trial is a nullity, and because the failure to file a timely motion for new trial bars plenary review of those issues for which the remedy is a new trial, suspending our rules does not avail the defendant the relief he desires.

---

[1] A claim that the proscriptive statute is facially unconstitutional amounts to a claim that the trial court lacks jurisdiction to impose a conviction under the statute. *See State v. Dixon*, 530 S.W.2d 73, 74 (Tenn. 1975) (holding that a facially unconstitutional statute is "void from the date of its enactment" and cannot form the basis for a "valid conviction").

[2] The defendant alleges the deprivation of his constitutional rights both prior to and during the trial under all manner of theories, none of which, even if true, would result in a dismissal of the charges. As a result, these claims have been waived.

-4-

That being said, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). This court will grant relief for plain error pursuant to Rule 36(b) only when:

> "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake."

*State v. Cooper*, 321 S.W.3d 501, 506 (Tenn. 2010) (quoting *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010)). In our view, none of the defendant's preempted issues satisfy the criteria for plain error review. That leaves for our consideration the defendant's claim that the statute proscribing the carrying of a firearm with the intent to go armed is facially unconstitutional and his claim that the trial court lacked subject matter jurisdiction of the case.

*Jurisdiction*

We consider first the defendant's claim that the trial court lacked subject matter jurisdiction to impose his convictions because a lack of subject matter jurisdiction would render his convictions void. *See Brown v. Brown*, 281 S.W.2d 492, 501 (Tenn. 1955) ("Courts derive their powers to adjudicate not from the parties, but from the law. A Court acting without jurisdiction of the subject matter, or beyond the jurisdiction conferred upon it, is therefore acting without authority of law and its judgments and decrees in so acting are void and bind no one.").

The defendant's somewhat convoluted argument challenging the jurisdiction of the trial court touches on several points, each of which has been previously considered and expressly rejected in other cases before this court. *See, e.g., State v. Booher*, 978 S.W.2d 953, 957 (Tenn. Crim. App. 1997) (rejecting Booher's claims regarding both *in personam* and subject matter jurisdiction on grounds nearly identical to those presented by defendant); *State v. Anthony Troy Williams*, No. M2012-00242-CCA-R3-CD (Tenn. Crim. App., Nashville, Oct. 3, 2012); *State v. Paul Williams*, No. W2009-02179-CCA-R3-CD (Tenn. Crim. App., Jackson, June 23, 2010); *State v. David A. Ferrell*, No. M2007-01306-CCA-R3-CD (Tenn. Crim. App., Nashville, Aug. 7, 2009); *State v. Bobby Gene Goodson*, No. E2001-00925-CCA-R3-CD (Tenn. Crim. App, Knoxville, July 29, 2002).

The record establishes that Sergeant Reed observed the defendant's vehicle traveling on a public roadway in Lawrence County with an unrecognized license tag affixed to the rear bumper. He followed the defendant into a nearby parking lot, where the defendant acknowledged that he did not have a proper registration, license tag, or driver's license. Sergeant Reed discovered a loaded handgun in the passenger compartment of the vehicle.

Article VI, section 1 of the Tennessee Constitution provides: "The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." Tenn. Const. art. VI, § 1. Code section 16-1-101 provides: "The judicial power of the state is vested in judges of the courts of general sessions, recorders of certain towns and cities, circuit courts, criminal courts, common law and chancery courts, chancery courts, courts of appeals, and the supreme court, and other courts created by law." T.C.A. § 16-1-101. Code section 16-10-102 vests in the circuit courts of the state "exclusive original jurisdiction of all crimes and misdemeanors, either at common law or by statute, unless otherwise expressly provided by statute or this code." *Id.* § 16-10-102; *see also id.* § 16-10-101 ("The circuit court is a court of general jurisdiction, and the judge of the circuit court shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal."). Exercising the power granted via Article VI, the legislature created 31 judicial districts, and vested jurisdiction of criminal cases arising in Lawrence County in the three trial judges for the Twenty-second Judicial District. *See id.* § 16-2-506(23)(A). Because the offense occurred in Lawrence County, the Lawrence County Circuit Court had subject matter jurisdiction over the defendant's misdemeanor charges. Moreover, the defendant, a resident of this state by his own admission, drove a motor vehicle on a public highway in Lawrence County and then personally appeared in the Circuit Court of Lawrence County to stand trial in this case, thus vesting that court with personal jurisdiction.

*Constitutionality of Code section 39-17-1307*

As indicated, the defendant claims that Code section 39-17-1307 is unconstitutional on its face because it is unconstitutionally vague. The State did not address this claim in its brief. In a related claim, the defendant argues that his possession of a loaded handgun inside a closed container cannot satisfy the elements of the offense under any definition, which claim is more in the nature of a challenge to the sufficiency of the evidence.[3]

---

[3] Because a finding that the evidence was insufficient to support the defendant's conviction would result in a dismissal of the charge, the defendant's failure to file a motion for new trial does not preclude our consideration of this challenge.

"Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *See Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003) (citing *State v. Robinson*, 29 S.W.3d 476, 479 (Tenn. 2000); *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997)). To this end, we "indulge every presumption and resolve every doubt in favor of the statute's constitutionality." *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002).

The applicable version of the statute provides, in pertinent part, that "[a] person commits an offense who carries with the intent to go armed a firearm." T.C.A. § 39-17-1307(a)(1) (2012). "'Person' includes the singular and the plural and means and includes any individual, firm, partnership, copartnership, association, corporation, governmental subdivision or agency, or other organization or other legal entity, or any agent or servant thereof." *Id.* § 39-11-106(27). "'Firearm' means any weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." *Id.* § 39-11-106(11). Although the term "carries" is not defined in the Code, it is capable of ready understanding by a person of ordinary intelligence. Consequently, Code section 39-17-1307 is not unconstitutionally vague.

The defendant's claim that his conduct in carrying a loaded handgun inside a cooler on the front seat of his vehicle did not satisfy the statutory requirements is less a challenge to the constitutionality of the statute and more an assault on the sufficiency of the convicting evidence. Our standard of review for a claim of insufficient evidence is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as

well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

This court has observed that "the necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proved by the circumstances surrounding the carrying of the weapon." *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). Here, the evidence established that the defendant placed a loaded handgun into a cooler and then placed the cooler on the front seat of his vehicle. The defendant acknowledged that he carried the weapon for the purpose of defending himself. Under these circumstances, the evidence was sufficient to support the defendant's conviction of carrying a firearm with the intent to go armed. *See Mathis v. State*, 566 S.W.2d 285, 287 (Tenn. Crim. App. 1977) (finding evidence sufficient for conviction where officers found two loaded firearms in the back floorboard of Mathis's car).

*Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE