IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2019 Session

## EMERACHEM POWER, LLC, ET AL., v. DAVID GERREGANO

Appeal from the Chancery Court for Knox County
No. 190097-1          John F. Weaver, Chancellor

_____

No. E2019-00292-COA-R3-CV

_____

This appeal was filed by the plaintiffs pursuant to the provisions of Tennessee Code Annotated section 67-1-1801 to challenge assessments rendered against them by the Commissioner of Revenue for the State of Tennessee.  The dispute involves the plaintiffs' challenge to Tennessee's assessments of excise tax for the period 2010 through 2012.  After cross motions for summary judgment were filed, the trial court found in favor of the Commissioner.  The plaintiffs appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Wayne R. Kramer and Bryce E. Fitzgerald, Knoxville, Tennessee, for the appellants, EmeraChem Power, LLC, EmeraChem Holdings, LLC, and EmeraChem, LLC.

Herbert H. Slatery, III, Attorney General and Reporter, Andreé S. Blumstein, Solicitor General, and Brian J. Ramming, Assistant Attorney General, Nashville, Tennessee, for the appellee, Commissioner of Revenue for the State of Tennessee.

**OPINION**

**I.  BACKGROUND**

EmeraChem Power, LLC, EmeraChem Holdings, LLC, and EmeraChem, LLC, (collectively, "the Entities") are all limited liability companies ("LLCs") organized and existing under and by virtue of the laws of the State of Delaware and qualified to do business in the State of Tennessee.  The primary business offices for the Entities are

located in Knoxville, Tennessee. The Entities are affiliated, in that EmeraChem Holdings is the sole owner and member of EmeraChem and is likewise the sole owner and member of EmeraChem Power. Put another way, EmeraChem and EmeraChem Power are wholly owned subsidiaries of EmeraChem Holdings, the parent company. EmeraChem Holdings is treated as a partnership for federal tax purposes.

EmeraChem is the operating company that does the manufacturing and selling. It manufactures catalytic converters and other products. EmeraChem Power provides engineering, design, and testing services. EmeraChem Holdings was created as a holding company; it holds and manages patents and the purchase of precious metals used by EmeraChem in the manufacturing process. The Entities were (and continue to be) leaders in nanophase chemistry and catalysis for the control of air emissions from power generating facilities, natural gas compression stations, and motor vehicles.

On November 16, 2009, EmeraChem Holdings submitted a Consolidated Net Worth Election Registration Application, which the Tennessee Department of Revenue ("Department") approved effective January 1, 2008. This allowed the Entities to compute their franchise tax using consolidated net worth. However, each member of the group was still required to compute its excise tax on a separate-entity basis and file a separate excise tax return.

EmeraChem Holdings filed its initial franchise-and-excise ("F&E") return as a consolidated return, including the net worth, assets, and income for EmeraChem Power and EmeraChem, while EmeraChem Power and EmeraChem both filed minimum returns reporting no net worth, assets, and no income. The Department disallowed the filing of such initial returns on a consolidated basis asserting that it was prohibited by Tennessee Code Annotated section 67-4-2007(d) because EmeraChem Holdings, the parent and sole member of EmeraChem Power and EmeraChem, was a limited liability company, not a corporation. Subsequently, the Entities each produced separate amended F&E tax returns and delivered them to the auditors. This time, the Entities filed separate returns (rather than a consolidated return as EmeraChem Holdings had done initially), but on the amended returns the Entities eliminated certain intercompany transactions in computing their excise tax liability. The Department, however, determined that the Entities had again failed to compute their tax liabilities correctly because they were still computing their excise tax on a consolidated basis.

As noted, EmeraChem Holdings was created to hold and manage multiple operating companies, patents, and the purchasing of precious metals used by EmeraChem in the manufacturing process. The holding of patents is important and necessary for the Entities to carry out their business and produce their products. In the tax year 2011, EmeraChem Holdings received $1,401,689 from the settlement of a legal malpractice

claim against a New York law firm.[1]  The funds received by EmeraChem Holdings arose out of the legal representation by the defending law firm in connection with a particular patent relevant to EmeraChem Holdings' European business activity.  EmeraChem Holdings claimed that attorneys for the law firm failed to properly register Patent No. 08028252 in Europe.  The fundamental basis upon which the amount of damages was paid to EmeraChem Holdings for the New York law firm's malpractice was lost European revenue as a result of potential patented products or patented licensing in Europe.

In filing its F&E tax return for 2011, EmeraChem Holdings reported the receipt of the legal malpractice settlement proceeds.  It classified the proceeds as "non-business" earnings for excise tax purposes and subtracted them as sourced outside of Tennessee.

The Department conducted F&E tax audits of the Entities in 2014 for the period January 1, 2010, through December 31, 2012.  During the audit period, the Entities did business in numerous states and foreign countries.  EmeraChem had less than 50 employees.  Neither EmeraChem Power nor EmeraChem Holdings had any employees during the audit period.  They all filed Tennessee F&E tax returns for the years 2010, 2011, and 2012.

During the audit period, transfers of industrial materials[2] ("Industrial Materials") took place between EmeraChem Holdings and EmeraChem.  The transfers by EmeraChem Holdings were not to the general public nor were the products ultimately sold by EmeraChem to the general public or to the end user.  Rather, EmeraChem Holdings procured the Industrial Materials and then transferred them to EmeraChem for future processing and incorporation into catalysts manufactured by EmeraChem.  Title to the Industrial Materials passed from the supplier to EmeraChem Holdings and then passed to EmeraChem.  The Industrial Materials were procured by EmeraChem employees using EmeraChem funds.  In addition, the volume, purchase price, and timing of the purchase of the Industrial Materials were at the direction of EmeraChem, again through its employees.  EmeraChem Holdings had no employees and had no funds during the audit period other than those provided by EmeraChem.  After processing and incorporating the Industrial Materials into the catalysts, EmeraChem would, in turn, sell the manufactured catalysts to a third-party subcontractor or other dealer who then sold the same to the end user (such as a power plant).  Furthermore, the amount of funds which EmeraChem Holdings received from EmeraChem (which represented more than 80% of EmeraChem Holdings' revenue) did not include a markup and did not exceed

---

[1]Receipt of the legal malpractice settlement proceeds in 2011 by EmeraChem Holdings was the first and only time either it or any other EmeraChem entity had received proceeds of such a nature.  The total amount of malpractice proceeds paid was $2,250,000.  After payment of $848,311 in attorneys' fees, the amount received by EmeraChem Holdings was $1,401,689.

[2]Precious metal raw materials.

EmeraChem Holdings' costs (including any freight, storage, and/or transportation costs). More than 50% of EmeraChem's revenues during the audit period were from sales of catalysts to the subcontractors and dealers.

As a result of the audit, the Department determined that in 2010, 2011, and 2012, the Entities should not have computed their excise tax on a consolidated basis and should not have filed consolidated tax returns. The Department asserted that under the applicable statute, only a single-member LLC that is wholly owned by a corporation may be disregarded by its parent company for excise tax purposes. EmeraChem and EmeraChem Power are single member LLCs, but EmeraChem Holdings, their single member, is treated as a partnership for federal income tax purposes.

By Notice of Assessment dated May 5, 2014, EmeraChem Power was advised that as a result of the audit conducted by the Department, it was liable for F&E tax, plus interest and penalties. The Department claimed that EmeraChem Power was liable for F&E tax of $1,240, a penalty of $124, and interest of $271.16, for a total amount assessed of $1,635.16. On May 28, 2014, pursuant to Tennessee Code Annotated section 67-1-1801(c)(3) and Tenn. Comp. R & Regs. 1320-1-2-.05(1), EmeraChem Power requested an Informal Conference.

By Notice of Assessment dated May 9, 2014, EmeraChem Holdings was advised that it was liable for F&E tax of $106,601, a penalty on the F&E tax of $10,660, and interest attributable to the F&E tax of $17,307.09. The Department further asserted that EmeraChem Holdings was liable for County Business tax of $7,864, a penalty in connection with the County Business tax of $1,965, and interest attributable to the County Business tax of $1,221.80. Finally, the Department asserted that EmeraChem Holdings was liable for City Business tax of $7,795, as well as interest thereon of $1,207.74. The Department claimed the assessed F&E tax was due largely to the receipt by EmeraChem Holdings of the legal malpractice settlement proceeds and the assessed Business tax was due as a result of the transactions described above. The Department rejected EmeraChem Holdings' classification of the proceeds as nonbusiness earnings and reclassified the proceeds as "business earnings" to be included as gross income for calculation of the excise tax. Of the total excise tax assessed against EmeraChem Holdings ($104,477), most of it ($91,109.79) represented the tax resulting from including the settlement proceeds as part of the company's business earnings for the 2011 tax year. The total amount the Department claimed to be due from EmeraChem Holdings, as reflected in the EmeraChem Holdings Notice and after applying various credits and payments, was $154,621.63. On May 28, 2014, EmeraChem Holdings requested an Informal Conference.

By Notice of Assessment dated June 13, 2014, EmeraChem was advised that it was found liable for F&E tax of $23,103.36, $2,310 in penalty, and $3,688.19 in interest relative to the F&E tax. The Department further asserted that EmeraChem was liable for

- 4 -

$9,760.19 in Sales & Use tax and $1,428.36 in interest resulting from the Sales & Use tax assessment. Finally, the Department noted that EmeraChem was entitled to a County Business tax credit of $9. Overall, as a result of the audit, the Department claimed that the total amount due from EmeraChem to the Department, after applying various credits and payments, was $40,281.10.[3] On June 24, 2014, EmeraChem requested an Informal Conference.

In the auditors' report for EmeraChem, the Department made the following statement:

> Tennessee law makes no provision for consolidated franchise/excise tax returns except in the instance of a single member LLC whose single member is a corporation. The single member of EmeraChem, LLC, and EmeraChem Power, is not a corporation rather, it is a limited liability company treated as a partnership for federal tax purposes. Nor have any of these entities been merged out of existence.... The consolidation work papers provided by the Taxpayer demonstrates that all three entities had activity both with each other as well as outside the affiliated group. Tenn. Code Ann. § 67-4-2007(d) specifically prohibits disregarding any of these entities for the purpose of filing Tennessee Franchise and Excise Tax Returns.

When asked about Tennessee Code Annotated section 67-4-2007(d), the auditor agreed that if EmeraChem Holdings had been a corporation instead of an LLC, "none of this would have been a problem." The auditor stated that if EmeraChem Holdings had been a corporation, then reporting the income and business activity of the Entities on a consolidated basis would have been permitted under the statute. According to the auditor, had EmeraChem Holdings been an S Corporation and had EmeraChem Power, EmeraChem Holdings, and EmeraChem filed their F&E tax returns for the years at issue on a consolidated basis, the result would have been exactly the same as that reflected on the initial F&E returns filed on behalf of the Entities.

According to the Department, it is appropriate for EmeraChem Power, EmeraChem Holdings, and EmeraChem to compute their net worth for franchise tax purposes on a consolidated basis but not their income or business activity for excise tax purposes. The Department asserted that the legal malpractice settlement proceeds of $1,401,689 should have been included in the EmeraChem Holdings' 2011 F&E tax return as business earnings based upon Tennessee Code Annotated section 67-4-2004(4). In its audits of the Entities, and specifically in the audit of EmeraChem Holdings for tax year

---

[3]EmeraChem does not contest the Sales & Use tax assessment.

2011, the Department claimed that the proceeds received by EmeraChem Holdings from the legal malpractice claim were subject to the F&E tax and must be included on the 2011 return resulting in a "tax due" of $91,109.79. In making such a claim, the Department stated, among other things, that "the holding of patents is an integral and essential part of the business of EmeraChem Holdings, LLC and its subsidiaries and [therefore the malpractice proceeds] falls within the definition of "business earnings" found in Tenn. Code Ann. §67-4-2004(4)...." As a result, the auditors (i) asserted that such proceeds were includable in EmeraChem Holdings' 2011 F&E tax return, (ii) disallowed the deduction, and (iii) stated that the proceeds were subject to the F&E tax.

After the holding of an Informal Conference pursuant to Tennessee Code Annotated section 67-1-1801(c)(3), the Commissioner adjusted the assessments. He issued an Adjusted Notice to EmeraChem Power, adjusting the applicable interest amount accruing prior to the issuance of the informal conference letter, resulting in a total adjusted amount due of $1,671.09, including excise tax in the amount of $1,240, penalty in the amount of $124, and interest in the amount of $307.09. The Commissioner also issued an Adjusted Notice to EmeraChem, adjusting the applicable interest amount accruing prior to the issuance of the informal conference letter and applying a $1,035.59 credit from a previous return, resulting in a total adjusted amount due of $39,933.13, including excise tax in the amount of $23,103, penalty in the amount of $2,310, and interest in the amount of $4,168.87. He issued an Adjusted Notice to EmeraChem Holdings, adjusting the applicable interest amount accruing prior to the issuance of the informal conference letter and applying a $12,000 credit from a previous return, resulting in a total adjusted amount due of $143,328.77, including excise tax in the amount of $104,477, business tax in the amount of $15,659, penalties in the amount of $12,625, and interest in the amount of $22,567.77. The overall total amount the Department claimed was $184,932.99 as of June 15, 2015.[4]

---

[4]EmeraChem paid the adjusted Sales and Use tax assessed against it ($9,760.19), plus applicable interest; thus, EmeraChem's Sales and Use tax Assessment is not at issue in this suit.

The Entities filed suit in August 2015. The case was heard on cross-motions for summary judgment. In a final judgment entered on January 18, 2019, the trial court upheld the excise tax assessments, upheld the penalties against EmeraChem and EmeraChem Power, and upheld the penalty against EmeraChem Holdings except for the portion attributable to the malpractice settlement proceeds ($9,110.97).

The trial court agreed with the Commissioner that EmeraChem Holdings' malpractice settlement proceeds were business earnings subject to Tennessee excise tax. It determined that the proceeds represented lost revenues related to the company's patents, which, if they had not been lost because of the malpractice of the New York law firm, would have been taxable as business earnings. The court also found no basis upon which to allow EmeraChem Holdings to apportion any of the proceeds to New York or elsewhere because it had failed to demonstrate a presence or business activities in New York. The Entities failed to show any business activities that were taxable both inside and outside Tennessee. The trial court further determined that the Entities were not entitled to file consolidated excise tax returns or compute their excise tax on a consolidated basis. The court rejected the Entities' constitutional challenge to section 67-4-2007(d), finding that they had failed to prove an equal-protection violation and that the Commissioner had demonstrated a rational basis for the statute's different treatment of corporations and LLCs. Finally, the court upheld the negligence penalties imposed by the Commissioner with respect to the consolidated tax returns because the Entities had been given prior warnings against the filing of consolidated returns.[5] The Entities filed this timely appeal.

## II. ISSUES

We restate the issues raised in this appeal as follows:

> 1. Whether the Entities were properly assessed additional excise tax for the years 2010 to 2012 because EmeraChem Holdings filed consolidated excise-tax returns on behalf of itself and EmeraChem and EmeraChem Power, instead of the Entities filing separate returns under Tennessee Code Annotated section 67-4-2007(d).
>
> 2. Whether Tennessee Code Annotated section 67-4-2007(d)'s requirement for the filing of separate returns is constitutional because there is a rational basis for excepting

---

[5]The court observed that the Commissioner had withdrawn the claim for the business tax assessment. The amounts related to that issue are $15,659 in business tax, $1,965 in penalty, and interest of $2,870.91.

LLC's whose single member is a corporation.

3. Whether the proceeds received by EmeraChem Holdings in 2011 from the settlement of a legal-malpractice claim were properly subject to Tennessee excise tax because they were "business earnings."

4. Whether the Entities were properly assessed negligence penalties for failing to file separate returns under Tennessee Code Annotated section 67-4-2007(d), when the Entities had prior notice of that requirement.

## III. STANDARD OF REVIEW

This case was decided by summary judgment. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Rye*, 477 S.W.3d at 250 (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013); *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

To the extent that the issues raised in this appeal require us to interpret and apply statutes, we note that statutory interpretation is a question of law, which we review de novo, affording no presumption of correctness to the conclusions of the trial court. *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015); *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)). The principles of statutory interpretation are well established. When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

"[W]e presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *SunTrust Bank v. Burke*, 491 S.W.3d 693, 695 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. June 15, 2015) (quoting *Lind v. Beaman Dodge*, 356 S.W.3d 889, 895

(Tenn. 2011)). "When a statute is clear, we apply the plain meaning without complicating the task." *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014). However, when a statute is ambiguous, "we may reference the broader statutory scheme, the history of the legislation, or other sources." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

Courts must liberally construe statutes that impose a tax in favor of the taxpayer and strictly construe them against the taxing authority. *Eastman Chemical*, 151 S.W.3d at 507. "[W]here there is doubt as to the meaning of a taxing statute, the doubt must be resolved in favor of the tax payer." *Commercial Standard Ins. Co. v. Hixson*, 133 S.W.2d 493, 494 (Tenn. 1939). This construction, however, must be fair and give effect to the language of the statute. *See, e.g., International Harvester Co. v. Carr*, 466 S.W.2d 207, 214 (Tenn. 1971); *United Inter-Mountain Tel. Co. v. Moyer*, 426 S.W.2d 177, 181 (Tenn. 1968).

## IV.  DISCUSSION

### Additional Excise Tax

Under Tennessee law, neither EmeraChem nor EmeraChem Power are permitted to file consolidated F&E tax returns with EmeraChem Holdings, their parent company, because EmeraChem Holdings is treated as a partnership for federal tax purposes.[6] The language of Tennessee Code Annotated section 67-4-2007(d) makes the separate filing requirement clear:

> For purposes of the excise tax levied by this part, a business entity shall be classified as a corporation, partnership, or other type business entity, consistent with the way the entity is classified for federal income tax purposes, and subject to tax in accordance with this part. Notwithstanding any law to the contrary, entities that are disregarded for federal income tax purposes, except for limited liability companies whose single member is a corporation, shall not be disregarded for Tennessee excise tax purposes.

Tenn. Code Ann. § 67-4-2007(d).

---

[6]Under the federal "check-the-box" tax scheme, LLCs with 2 or more members (owners) are treated as partnerships by default. If an LLC wishes to be treated as a corporation, they may elect such treatment so long as they are an eligible entity under 26 C.F.R. § 301.7701-3(a).

For Tennessee F&E tax purposes, businesses are classified according to their federal income tax classification. *Id*. Under the general rule, businesses classified as disregarded entities for federal income tax purposes *will not* be disregarded for Tennessee F&E tax purposes. *Id*. Since Tennessee is a separate reporting state for excise-tax purposes, business entities must calculate their excise-tax liability separate from any parent company or affiliate, and they must file their own separate return.

The legislature created one exception to the general rule, and that exception only applies to business entities that are: (1) single-member LLCs, (2) classified as disregarded entities under the federal income tax system, and (3) their single-member parent is a corporation. If a business entity meets all three requirements, it is disregarded for Tennessee F&E tax purposes. This exception is the only instance in which a business entity may file a consolidated excise-tax return with its parent company.

Tenn. Comp. R. & Regs. 1320-06-01-.40 further clarifies the language in Tennessee Code Annotated section 67-4-2007(d):

> **(1) Disregarded Limited Liability Companies.** A limited liability company is disregarded for franchise and excise tax purposes only if it is disregarded for federal income purposes and its single member is classified as a corporation for federal income tax purposes. If a limited liability company does not meet both of these requirements, it will be treated separately for franchise and excise tax purposes and must file its own separate franchise and excise tax return.
>
> **(2) Other Federally Disregarded Entities.** Only a limited liability company meeting the requirements of (1) will be disregarded for franchise and excise tax purposes. All other taxpayers subject to the franchise or excise tax will be treated separately, regardless of whether they are otherwise disregarded for federal income tax purposes.

Tenn. Comp. R. & Regs. 1320-06-01-.40. The regulation repeats the plain language of Tennessee Code Annotated section 67-4-2007(d) and explains that the parent company's federal income tax classification determines whether the subsidiary LLC will be disregarded for Tennessee F&E tax purposes. The exception to the general rule applies to LLCs "whose single member is a corporation," but the "corporation" requirement is satisfied when "the single member is classified as a corporation for federal income tax purposes." Tenn. Code Ann. § 67-4-2007(d). Therefore, non-corporate parents satisfy the corporation requirement so long as the non-corporate parent is classified as a corporation for federal income tax purposes.[7]

---

[7] For example, a subsidiary whose single-member/parent is an LLC will fall within the exception to the general rule if the parent LLC is classified as a corporation for federal tax purposes. This result is

EmeraChem and EmeraChem Power are not disregarded entities for Tennessee F&E tax purposes because neither fall within the exception to the general rule set out in Tennessee Code Annotated section 67-4-2007(d). Although EmeraChem and EmeraChem Power are single-member LLCs and disregarded entities under the federal income tax system, their parent–EmeraChem Holdings–is classified as a partnership for federal income tax purposes. Since EmeraChem Holdings is not classified as a corporation, EmeraChem and EmeraChem Power are not disregarded entities for Tennessee F&E tax purposes. Accordingly, EmeraChem and EmeraChem Power must calculate their own separate excise-tax liability and file their own separate returns. "Doing business in Tennessee by any person or taxpayer . . . is declared to be a taxable privilege." Tenn. Code Ann. § 67-4-2005. The Entities must conform to the laws of Tennessee, and they cannot compute their excise tax on a consolidated basis or file consolidated excise-tax returns with their parent, EmeraChem Holdings.

## Constitutionality

We affirm the trial court's determination that Tennessee Code Annotated section 67-4-2007(d) is constitutionally valid under both the United States Constitution and the Tennessee Constitution. Rational basis scrutiny is the appropriate level of equal protection review in this case. *Dr. Pepper Pepsi-Cola Bottling Co. of Dyersberg, LLC v. Farr*, 393 S.W.3d 201, 209 (Tenn. Ct. App. 2011). "If any possible reason can be conceived to justify the classification, or if the reasonableness be fairly debatable, then the legislation will not be struck down." *Id.* at 210. It is well settled that the appellant bears the burden in proving that a tax statute is unconstitutional and must meet this burden by establishing that either: (1) the state's objective is not legitimate, or (2) the statutory classification does not rationally advance a legitimate state objective. *Nolichucky Sand Co. v. Huddleston*, 896 S.W. 2d 782, 788 (Tenn. Ct. App. 1994); *see also Admiralty Suites and Inns v. Shelby County*, 138 S.W.3d 233, 240 (Tenn. Ct. App. 2003). In this case, the Entities have failed to meet their burden for the reasons addressed below.

## 1.

Tennessee Code Annotated section 67-4-2007(d) has a rational basis because it captures business earnings that are subject to the Tennessee F&E tax and which may otherwise go unreported (or be under-reported) by certain parent companies.

In Tennessee, for F&E tax purposes, the starting point in determining a business entity's tax classification is its federal tax return and federal tax classification. *Newell*

---

proper despite the fact that an LLC is not a corporation.

*Window Furnishing, Inc. v. Johnson*, 311 S.W.3d 441, 455 (Tenn. Ct. App. 2008). Analyzing the purpose of Tennessee Code Annotated section 67-4-2007(d) requires an understanding of how the federal government taxes different business entities based on their status as a corporation, partnership, or disregarded entity.

Subchapter C of the Internal Revenue Code applies to businesses organized as corporations. Corporate profits are subject to double taxation because corporations must report their earnings, file federal tax returns with the Internal Revenue Service, and pay taxes. When a corporation distributes corporate profits to its shareholders, the shareholders must report the amount they receive and pay the corresponding taxes.[8] Thus, the corporate profits are reported and taxed twice: once at the corporate level, and once by the individual shareholders.

Subchapter K of the Internal Revenue Code applies to partnerships. Unlike corporations, partnerships do not file federal tax returns at the entity level or pay taxes on partnership profits. Instead, a partnership simply tracks its profits and losses and, at the end of its tax year, allocates the total profit or loss to the individual partners based on the partnership agreement. The individual partners, rather than the partnership, are responsible for reporting the partnership's earnings and paying the corresponding taxes. The Internal Revenue Code labels this style of taxation as "pass-thru" because business earnings pass through the business entity without being taxed. Sole proprietorships and single-member LLCs, both of which are classified as disregarded entities by default, also have the benefit of pass-thru taxation. On the whole, this pass-thru system can make it more difficult to administer certain tax laws and trace business income.

LLCs are a hybrid business entity, and–unlike corporations or partnerships–the Internal Revenue Code does not contain a specific subchapter addressing LLC taxation. Instead, LLCs are given considerable flexibility and may be categorized as corporations, partnerships, or disregarded entities. Under the default rules, LLCs with a single-member–such as EmeraChem and EmeraChem Power–are classified as disregarded entities, and LLCs with more than one owner–such as EmeraChem Holdings–are classified as partnerships for federal income tax purposes. In both scenarios, the LLCs are pass-thru entities that do not file federal tax returns.[9]

In this case, both EmeraChem and EmeraChem Power are disregarded entities. Both companies generate income, and the profits are passed through to their mutual

---

[8]The amount the taxpayer reports/pays varies considerably and typically depends on whether the distribution is a dividend, non-liquidating distribution, or liquidating distribution.

[9]LLCs do have the ability to opt-in to subchapter C tax treatment in lieu of the default rules. If an LLC makes this election, the business entity must file a federal tax return with the IRS and pay any corresponding taxes. As with corporations, the LLCs profits will be taxed a second time when they distribute those profits to their individual members.

parent company–EmeraChem Holdings–without being taxed. Since EmeraChem Holdings is classified as a partnership for federal tax purposes, its profits (including the income it receives from EmeraChem and EmeraChem Power) are passed through to its individual members/owners without being taxed. When EmeraChem Holdings allocates profits to its members, the individual members are the only parties responsible for reporting the profits and paying taxes.

The Entities' business structure illustrates why Tennessee does not follow federal tax classification or allow single-member LLCs to automatically retain their disregarded entity status. A series of pass-thru business entities, none of which file federal tax returns, increases the risk that taxpayers will under-report earnings that are subject to the Tennessee F&E tax. Further, following the federal system would make administration of the tax laws more difficult. As argued by the Commissioner:

> Tenn. Code Ann. § 67-4-2007(d) reaches earnings that might otherwise be lost if they were allowed to be passed through to a nontaxable parent. Because Tennessee excise tax law is tied initially to federal tax returns, if the federal rule were followed, single-member LLCs could pass their earnings through to a partnership that is not subject to Tennessee excise tax. And because an LLC that is [treated as] a partnership [for federal income tax purposes] does not report its income for federal purposes at all there would be no way that the Commissioner could know, much less tax, the income. There is the very real possibility that the disregarded LLC's earnings, and the resulting Tennessee excise tax, could be altogether avoided by the nontaxable parent. It is certainly reasonable for the State to seek to recover excise tax from a business based on its Tennessee earnings, and the statute accomplishes this goal.

The State's objective is to reduce the risk of under-reporting and hold business entities increasingly accountable for reporting their business earnings. This objective is undoubtedly legitimate, and the federal government frequently enacts proactive tax regulations to reduce the risk of under-reporting. Tennessee Code Annotated section 67-4-2007 rationally advances the state's legitimate objective because it decreases the number of LLCs classified as disregarded entities and thereby increases the overall number of businesses that must file separate tax returns for Tennessee F&E tax purposes. This structure increases transparency and reduces the overall risk of abuse or underreporting.

**2.**

Section 67-4-2007(d) rationally advances the state's legitimate objective despite the fact that the statute fails to capture income that may otherwise go unreported by S corporations.

The Entities bear the burden of proving that the statute is unconstitutional. Since the state's purpose is legitimate, the constitutional challenge fails unless the Entities demonstrate that the statutory classification in Tennessee Code Annotated section 67-4-2007 is irrational or arbitrary. *Nolichucky Sand Co.*, 896 S.W. 2d at 788. A state is free to categorize entities, and in doing so, the grouping may result in a law that is either under-inclusive or overinclusive. CALVIN MASSEY & BRANNON P. DENNING, AMERICAN CONSTITUTIONAL LAW: POWERS AND LIBERTIES 639 (6th ed. 2019). "A law is enacted to achieve a legislative objective, but the classification employed by the law may not perfectly achieve that objective." *Id.* at 637. "A statutory classification is said to be under-inclusive when it includes (or excludes) fewer people or things than necessary to perfectly achieve the objective." *Id.* at 638. However, the under-inclusive or over-inclusive nature of a statutory classification rarely renders the statute arbitrary or irrational. *Id.*

Although the statutory classification in section 67-4-2007(d) helps achieve the State's legitimate purpose, the Entities have demonstrated that the language of the statute may fail to capture income from one type of pass-thru parent company: S corporations.[10] S corporations are unique because they are classified as corporations for federal tax purposes, but they have the benefit of pass-thru taxation and allocate their earnings to shareholders in the same manner that partnerships pass their earnings to partners.[11] *See* I.R.C. §1363(b) (2019). The Entities are correct in their assertion that LLCs whose single-member is an S corporation receive preferential treatment under Tennessee Code Annotated section 67-4-2007(d) despite the pass-thru nature of the S corporation parent:

> S corporations are corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal tax purposes. Shareholders of S

---

[10]S corporations are typically much smaller than C corporations. In order to become an S corporation, the corporation must submit Form 2553 Election by a Small Business Corporation and meet several requirements. Subchapter S of the Internal Revenue Code provides guidelines and rules for S corporations in addition to the rules set out in Subchapter C.

[11]Every business has owner(s), but the title of the owner(s) depends on the type of business entity. Partnerships pass their income to *partners*, LLCs pass their income to the *members* of the LLC, and S corporations pass their income to corporation's *shareholders*. When an LLC or S corporation is classified as a partnership for tax purposes, the members or shareholders should retain the title associated with their ownership rather than being referred to as partners.

corporations report the flow-through of income and losses on their personal tax returns and are assessed tax at their individual income tax rates. This allows S corporations to avoid double taxation on the corporate income.[12]

Income passes through S corporation parent companies in the exact same manner that it passes through other types of pass-thru parents companies, but an S corporation's subsidiary may nonetheless fall within the exception to the general rule in Tennessee Code Annotated 67-4-2007(d). Since S corporations are still classified as corporations for federal income tax purposes, LLCs whose single-member parent is an S corporation will retain their status as a disregarded entity and have the benefit of filing consolidated excise-tax returns with their pass-thru parent company. The Entities argue that the statutory classification in Tennessee Code Annotated section 67-4-2007(d), and its inclusion of S corporation parents in the exception to the general rule, renders the statute irrational and arbitrary.

The Entities are correct that Tennessee Code Annotated 67-4-2007(d) would be even more effective if the exception to the general rule was limited to LLCs whose single-member parent is a C corporation rather than all corporations in general. If the language excluded S corporation parents, then fewer LLCs would retain their disregarded entity status. Such change would increase the number of business entities that are required to file their own returns and calculate their own separate excise-tax liability. This may increase transparency and further reduce the risk of under-reporting, but such change must be made by the legislature, not the judiciary.

If the purpose of Tennessee Code Annotated 67-4-2007(d) is to track business income that could be under-reported by pass-thru parent companies, then the statutory classification seems ineffective when it is applied to LLCs whose single-member parent is an S corporation. Treating S corporations like regular corporations seems to undermine the purpose of the statute because S corporations, like other pass-thru entities, appear equally likely to engage in underreporting. However, this reasoning is unsound. Unlike other pass-thru entities, S corporations *must* file informational tax returns with the Internal Revenue Service. RICHARD L. DOERNBERG, FEDERAL INCOME TAXATION OF CORPORATIONS AND PARTNERSHIPS 523 (5th ed. 2014). This reduces the risk that S corporations will engage in abusive under-reporting because the Commissioner can trace an S corporation's income by obtaining the informational filing. Overall, there is more transparency and less difficulty administering tax laws when a pass-thru parent is an S corporation. This helps explain why the Tennessee legislature gives LLCs whose single-

---

[12]Internal Revenue Service, *S Corporations*, DEPARTMENT OF TREASURY (Apr. 08, 2020), https://www.irs.gov/businesses/small-businesses-self-employed/s-corporations

member parent is an S corporation preferential treatment as compared to LLCs with other types of pass-thru parents.

The Entities failed to establish that the statute is unconstitutional. The statutory classification has a rational basis because it captures a significant portion of income that is difficult for the Commissioner to track. Furthermore, the exception to the general rule does not undermine section 67-4-2007(d)'s legitimate purpose because S corporations are less likely to engage in abusive underreporting.

**3.**

Tennessee Code Annotated section 67-4-2007(d)'s preferential treatment of subsidiary LLCs whose single-member parent is an S-corporation does not violate the Equal Protection Clause.

The Entities' equal protection argument is based on the fact that Tennessee Code Annotated section 67-4-2007(d) treats two similarly situated business entities differently: subsidiary LLCs whose single-member parent is an S corporation, and subsidiary LLCs whose single-member parent is an LLC that is classified as a partnership for federal income tax purposes. In both scenarios, the subsidiary LLCs are pass-thru entities with pass-thru parents. Although they are similarly situated for federal tax purposes, Tennessee distinguishes between the subsidiary LLCs based on whether their single-member parent is classified as a corporation for federal income tax purposes.[13]

Both the United States Constitution and the Tennessee Constitution contain an Equal Protection Clause that guarantees, "all persons similarly circumstanced shall be treated alike." *State v. Robinson*, 29 S.W.3d 476, 480 (Tenn. 2000). However, "it is well settled that the equal protection clause does not require absolute equality from the State." *Posey v. City of Memphis*, 164 S.W.3d 575, 578-79 (Tenn. Ct. App. 2004) (citing to *Gray's Disposal Co. v. Metro Gov't of Nashville,* 122 S.W. 3d 148, 162-63 (2002). "Legislative classifications are presumed to be valid unless there is some reason to be suspicious of the classifying device or its effect." CALVIN MASSEY & BRANNON P. DENNING, AMERICAN CONSTITUTIONAL LAW: POWERS AND LIBERTIES 639 (6th ed. 2019). Any statutory classification related to the application of certain tax laws necessarily divides people into two classes, but that is not enough to invalidate the law as violative of the equal protection clause. *Id* at 638. Statutory classifications are not in

---

[13]The differential treatment begins at the federal level because the Internal Revenue Service categorizes S corporations as corporations for federal income tax purposes despite the fact that they are pass-through entities. If the Internal Revenue Service classified S corporations as partnerships (their function equivalent), then the statutory classification in Tennessee Code Annotated section 67-4-2007(d) would not give rise to unequal treatment.

themselves improper, and the legislature is not required to treat all businesses the exact same. *Christ Church Pentecostal v. Tenn. State Bd. of Equalization*, 428 S.W.3d 800, 822 (Tenn. Ct. App. 2013) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Further, the legislature is allowed considerable latitude in establishing categorical classifications. *Id*.

Here, the Entities failed to overcome the presumption that Tennessee Code Annotated section 67-4-2007(d) is valid. The unequal treatment of two business structures does not equate to unlawful discrimination in violation of the Equal Protection Clause in the 14th Amendment to the United States Constitution or Article XI, Section 8 of the Tennessee Constitution. A statutory classification based on a business's structure and the federal tax classification of their parent company is not inherently suspicious. The Tennessee legislature is allowed considerable latitude in establishing categorical classifications, and the federal filing requirement associated with S corporations justifies the differential and preferential treatment of subsidiary LLCs whose single-member pass-thru parent is an S corporation.

Business entities are free to organize their enterprise in a manner that affords them the benefit of consolidated filing for federal income tax purposes and Tennessee F&E tax purposes. It would be improper to construe Tennessee Code Annotated section 67-4-2007(d) as violating Equal Protection since business entities are ultimately responsible for determining how the statute affects their filing status. If the Entities wanted to file consolidated tax returns, they should have read the Tennessee laws and structured their enterprise accordingly. Even after EmeraChem Holdings was formed, the LLC could have elected to be classified as a corporation for federal tax purposes so that the Entities could have the benefit of consolidated filing. The Entities did not make such election, and they should not expect special treatment.

**Business Earnings**

An issue before us is whether the proceeds from a legal malpractice action should be categorized as business earnings subject to the Tennessee excise tax. The damages from the malpractice action arose when EmeraChem Holdings' New York attorneys improperly filed a European patent. Although the European patent filing was unsuccessful, the damages awarded in settlement of the malpractice claim were nonetheless based on profits that would have been earned if the patent had been properly filed.[14] We agree with the Commissioner and affirm the trial court's holding that the tax classification of the settlement proceeds should be determined by looking to the nature and basis of the settled action, with those settlement proceeds having the same nature as

---

[14]EmeraChem Holdings stipulated that the damages paid in its legal malpractice action represented lost revenues from potential patented products or patent licensing in Europe (The fundamental basis upon which the amount of damages was paid . . . was lost European Revenue.").

the right that was compromised. *See Freda v. Comm'r*, 656 F.3d 570, 573-577 (7th Cir. 2011).

**1.**

Any income that falls within Tennessee's statutory definition of business earnings will be subject to the Tennessee Excise tax. "Business earnings" under Tennessee Code Annotated section 67-4-2004 are:

> Earnings arising from transactions and activity in the regular course of the taxpayer's trade or business or earnings from tangible and intangible property, if the acquisition, use, management or disposition of the property constitutes an integral part of the taxpayer's regular trade or business operations. In essence, earnings that arise from the conduct of the trade or trades or business operations of a taxpayer are "business earnings," and the taxpayer must show by clear and cogent evidence that particular earnings are classifiable as nonbusiness earnings. A taxpayer may have more than one (1) regular trade or business in determining whether income is "business earnings."

Tenn. Code Ann § 67-4-2004(4).

In examining the definition of business earnings under Tennessee Code Annotated section 67-4-2004(4), two tests have been identified. The section of the statute defining "business earnings" as "[e]arnings arising from transactions and activity in the regular course of the taxpayer's trade or business" has been referred to as the "transactional test," whereas earnings "from tangible and intangible property, if the acquisition, use, management or disposition of the property constitutes an integral part of the taxpayer's regular trade or business operations" has been called the "functional test." *See Newell Window Furnishing*, 311 S.W.3d at 446-47.

Relevant here is the functional test, business earnings that, "arise from either the management, use, acquisition, or disposition of property that constitutes an integral part of the taxpayer's trade or business." *Id.* at 447. The phrase, "acquisition, use, management or disposition of the property," has been interpreted to mean that, "the taxpayer must control, but not necessarily own, the property in order for the earnings arising from that property to qualify as business earnings." *Blue Bell Creameries v. Roberts*, 333 S.W.3d 59, 65 (Tenn. 2011). If the property is incidental or unrelated to the taxpayer's business operations, earnings from that property will not fall within the definition of business earnings. *Id.* Earnings from the disposition of intangible property

are properly classified as business earnings subject to the Tennessee excise tax if the intangible property was an integral part of the taxpayer's business. *Id.* In determining whether the property was an integral part of the taxpayer's business, courts determine whether the property itself was an integral part of the corporation's regular business, not whether the act of selling that property is an integral part of the corporation's business. *Id*.

The issue of classifying malpractice settlement proceeds for tax purpose has been settled in other courts, and those opinions are instructive for determining whether EmeraChem Holdings' settlement proceeds should be categorized as business earnings. The Seventh Circuit held that, for purposes of determining the tax classification of settlement proceeds, "the amounts received in compromise of a claim must be considered as having the same nature as the right compromised." *Freda*, 656 F.3d at 573-574. The court must assess the nature and basis of the action settled. *Id*. If the settlement proceeds represent damages for lost profits or earnings, then those proceeds should be classified as business earnings and taxed as if they had been earned in the regular course of business. *Id*.

EmeraChem Holdings argues that the underlying basis of the settlement was legal malpractice, and the settlement proceeds were paid in consideration of EmeraChem Holdings giving up its right to move forward with its lawsuit. However, EmeraChem Holdings stipulated that the settlement amount was calculated based on lost revenues from potential patented products or patent licensing in Europe. Thus, the settlement payment EmeraChem Holdings received in compromise of its claim actually represents two rights: (1) the right to receive income that would have been generated from the European patents, and (2) the right to move forward in its malpractice lawsuit. If the attorneys had not committed malpractice by improperly filing the European patents, the revenue generated by those patents would have been taxable as business earnings. Overall, the nature and basis of the settled action is akin to a business transaction in which EmeraChem Holdings was compensated for lost business earnings. Since the amount received in settlement takes on the same nature as the right that was compromised, the earnings that represent lost business revenue must be categorized as business earnings for Tennessee excise-tax purposes. *Freda*, 656 F.3d at 573-574.

Under the functional test, the settlement proceeds are business earnings because they arose from EmeraChem Holdings' management, use, or acquisition of its U.S. patents, all of which is controlled exclusively from the office in Tennessee. Furthermore, the patents are an integral part of EmeraChem Holdings' business, and holding patents is neither incidental or unrelated to EmeraChem Holdings' business operations.[15] In light of the foregoing, the trial court and Commissioner properly classified the settlement

---

[15]EmeraChem Holdings owns approximately seventeen U.S. patents, most of which are also registered abroad.

payment as business earnings.

EmeraChem Holdings argues that, if the settlement proceeds are indeed business earnings, they should be apportioned because EmeraChem Holdings does business in numerous states and in Europe. Specifically, EmeraChem Holdings wants the proceeds to be apportioned based on the business it conducts in New York. The Commissioner apportioned the entire amount of settlement proceeds to Tennessee based on their finding that EmeraChem Holdings had no nexus of business elsewhere:

> EmeraChem Holdings had no employees, property, activities, operations, offices, or other facilities in New York, California, or elsewhere. Indeed, the only activities in which EmeraChem Holdings is engaged are conducted from its office in Knoxville, Tennessee. The company performs only two functions: (1) holding and managing patents, and (2) purchasing precious metals in or order to immediately sell them to EmeraChem, which is also located only in Tennessee. Even the malpractice claim against the New York law firm was handled by Tennessee attorneys and the settlement agreement specifically states that it was made "in accordance with the law of the State of Tennessee" and can be enforced only in Tennessee. EmeraChem Holdings' connections to Tennessee are extensive and exclusive. No operations are conducted elsewhere.

(Internal citations omitted). The trial court agreed with the Commissioner and concluded that the record did not support the assertion that EmeraChem Holdings was entitled to apportionment.

Apportionment applies to business earnings and it is intended to obtain a rough approximation of the corporate income that is related to activities conducted in the taxing state. *Blue Bell Creameries*, 333 S.W.3d at 65. The taxpayer, EmeraChem Holdings, has the burden of establishing that it is entitled to apportionment. *Navarre Corp. v. Tidwell*, 524 S.W.2d 647, 649 (Tenn. 1975).

Reviewing the record, EmeraChem Holdings failed to establish that it is entitled to apportionment. All of EmeraChem Holdings' business is conducted in Tennessee. EmeraChem Holdings asserted that it held some precious metals in New York or California accounts, but it did not hold the title to those materials. When EmeraChem Holdings purchased precious metals from their seller, it would immediately sell the precious metals to EmeraChem and simultaneously transfer title to EmeraChem. Further, the fact that EmeraChem Holdings does not have employees, property, operations, offices, or facilities anywhere other than Tennessee indicates that it has no nexus of

business elsewhere.    Accordingly, we affirm the trial court's finding that the Commissioner's decision to apportion the entire amount of settlement proceeds to Tennessee was proper.

## Negligence Penalties

The Commissioner assessed a 10% negligence penalty on the excise tax due from each entity.  The trial court determined that: (1) the penalty was properly assessed with respect to the excise tax attributable to the consolidated reporting, but (2) the penalty *was not* properly assessed with respect to the malpractice settlement proceeds.  *See* Tenn. Code Ann. § 67-1-804(b)(5).  We affirm the trial court's finding.

The portion of negligence penalties attributable to the Entities' consolidated filing was properly assessed.  Tennessee Code Annotated section 67-4-2007(d) plainly states that a subsidiary LLC cannot be a disregarded entity unless its single-member parent is classified as a corporation for federal income tax purposes.  Further, the Commissioner issued a general notice that a single-member LLC will not be disregarded for F&E tax purposes if its single-member is not classified as a corporation for federal tax purposes. *See* Tennessee Important Notice No.13-16, issued November 1, 2013.[16]

The Entities received specific warnings against the filing of the consolidated tax return.  Before the assessments in this case, EmeraChem Holdings also received a F&E tax assessment for 2008 and consequently participated in an informal conference with the Department.  Afterward, the Department issued its informal conference decision, and stated that EmeraChem was not a disregarded entity because its single-member, EmeraChem Holdings, is an LLC that is treated as a partnership for federal income tax purposes, not a corporation for federal income tax purposes, and, therefore, the single-member LLC exception did not apply:

> EmeraChem, LLC did not become a disregarded entity for the purposes of franchise, excise tax.  Under Tenn. Code Ann. § 67-4-2007(d), only LLC's with a single corporate member are disregarded.  EmeraChem, LLC's single-member, the Taxpayer [EmeraChem Holdings] is an LLC that is treated as a partnership for federal income tax purposes.  The Taxpayer [EmeraChem Holdings], therefore, is not a corporation for purposes of Tenn. Code Ann. §67-4-2007(d).  And since EmeraChem, LLC's single-member, the Taxpayer [EmeraChem Holdings] is not a corporation, the

---

[16]The Commissioner's notice is not evidence that the law was uncertain or that the Entities would be reasonable in ignoring the plain language of the statute and rule.  A notice can be issued for reasons other than the lack of clarity in the law.  For instance, the notice can be issued because of taxpayers ignoring the eligibility requirement and subjecting themselves to penalties.

SMLLC [single-member limited liability company] exception ... does not apply.

Considering the plain language of the statute, and the specific notices given to the Entities, we cannot find that the Entities exercised due care in filing their consolidated tax return for state excise tax or in failing to report their state excise tax separately. Accordingly, the negligence penalty attributable to that failure was properly assessed and will not be remitted.

However, as to the negligence penalty attributable to the legal malpractice settlement, we agree with the trial court that the penalty *was not* properly assessed and must be remitted. "A court of equity, hearing a controversy between the State and a taxpayer who has been assessed a penalty, has the power of remitting the penalties imposed upon the taxpayer when the equities of the case demand." *James v. Huddleston*, 795 S.W.2d 661, 664 (Tenn. 1990). Neither the Entities nor the Commissioner had ever entertained the issue of how to classify the receipt of proceeds from the settlement of a legal malpractice claim from another state. The issue was novel, unsettled, and unclear. In light of this, the Entities acted in good faith with good and reasonable cause.

The Commissioner's decision to assess the excise tax required the Commissioner's auditor to consult with her office in Nashville and involved a number of people. According to the auditor, she imposed the penalty on the entire amount of the assessment, including the assessment arising from the filing of the consolidated tax return, the assessment for the legal malpractice proceeds, and the assessment for the business tax, because she was of the opinion that she had no alternative but to impose penalties on the entire assessment. However, under Tennessee Code Annotated section 67-1-802 and -803, the Commissioner's authority to waive or abate penalties may be exercised to waive or abate in "whole or in part, any statutory penalty imposed under any revenue laws administered by the commissioner." Tenn. Code Ann. § 67-1-802 and -803.

We find that "the taxpayer acted in good faith upon a reasonable though mistaken application of [the] law" in incurring the deficiency and that the Commissioner acted under a mistaken application of law in assessing the penalty on the entire assessment including that attributable to the legal malpractice proceeds. *Benson v. U.S. Steel Corp.*, 465 S.W.2d 124, 130 (Tenn. 1971). EmeraChem Holdings showed "good and reasonable cause" and the equities of the case require the remission of the penalty attributable to the legal malpractice settlement proceeds. *Benson*, 465 S.W.2d at 130 (holding that taxpayers retain traditional right to invoke jurisdiction of equity to void inequitable penalties in alternative to Tennessee Code Annotated section 67-1-804(e)(1965)).

In summation, we affirm the judgment of the trial court as to both negligence penalty issues. The negligence penalties attributable to the Entities' consolidated filing

were properly assessed and will not be remitted. The negligence penalties attributable to the malpractice settlement proceeds were not properly assessed and will be remitted.


## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants, EmeraChem Power, LLC, EmeraChem Holdings, LLC, and EmeraChem, LLC.


_____
JOHN W. MCCLARTY, JUDGE